UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

JOHN "JACK" HANEY,

    Plaintiff,

v.

STARBOARD YACHT GROUP, L.L.C., a
Florida limited liability company, and
JAKE STRATMANN, an individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff, John "Jack" Haney ("Haney"), through his undersigned attorneys, files this Complaint against the Defendants, Starboard Yacht Group, L.L.C. and Jake Stratmann (hereinafter, "Defendant"), and alleges:

## JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

(a) Haney was employed in the Southern District of Florida by the corporate Defendant which at all material times conducted, and continues to conduct, business in Broward County; and

(b) Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because the corporate Defendant keeps an office for the transaction of its customary business in this district (Starboard Yacht Group, L.L.C. is headquartered in Broward County, and Jake Stratmann resides in Broward County).

**CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION**

4. Plaintiff has complied with all conditions precedent in this case, or they have been waived.

**PARTIES**

5. Haney resides within this judicial district.

6. Defendant Starboard Yacht Group, Inc. is a Florida corporation which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States. Starboard Yacht Group, Inc. owns and operates a marina/boat repair facility in Fort Lauderdale, Florida at which for all material times Haney worked for and his labor benefited.

7. The corporate Defendant paid employees and paid Haney (through Stratmann) and has gross annual sales volume that greatly exceeds $500,000 annually (around $3,000,000.00), at least for years 2017-19. The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida. For example, in the South Florida location Defendant has at least 15 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida

2

(and thus have moved in interstate commerce), and use cars and vehicles and boats and work on boats that in turn use gasoline, which vehicles, boats, and gasoline were manufactured outside the State of Florida.  Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, boat owners, and others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

8. Additionally, Haney is entitled to individual coverage, as he regularly and recurrently made calls to vendors, suppliers, prospective customers, and customers across state lines and thus he participated in the actual movements of goods or services and commerce across state lines.

9. Individual Defendant Stratmann is the owner and general manager of the corporate Defendant and operates it day-to-day and has operational control over the corporate Defendant deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendant had the power the hire and fire, daily managed the company and was ultimately responsible for the profitability of the business.

10. Concerning Haney, Defendant Stratmann hired him, told him what to do day-to-day, determined how much and whether he would be paid (pay was often late because the business has cash-flow issues, at least those were the excused given by Defendant Stratmann to Haney), and Haney had to follow the individual Defendant's orders.

11. The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

12. The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act. During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13. Haney was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14. Haney was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Haney performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15. Within the past three (3) years (October 2019 to March 2020), Haney worked for the Defendant performing various duties. Haney worked under the title "project manager", which duties at first included performing manual labor fixing boats, attempting to bring in business (boat owners with their boats), and review the company's financials to attempt to increase its $3,000,000 annual gross revenue number, and his compensation was to be a $1,000/wk + $1,000/wk draw off of commissions he was supposed to receive for business that he steered to the Defendant—Haney steered approximately $200,000 in business to the Defendant.

16. Haney's duties included doing whatever task the Defendant instructed him to perform, which varied depending the time (the last month or two he almost exclusively was assigned manual labor repair work to perform), but he was subordinated to the receptionist bookkeeper, shop foreman, and many of the other employees, and had to obtain their approval as to how they wanted to handle

certain situations.  Before the last month or two, he did spend some time attempting to and actually bringing in some business, reviewed receivables records, billing an invoicing, collection, and other tasks.

17. Haney did not have the ability to hire or fire anyone (nor did he hire or fire anyone), and he did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18. Haney was only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve him exercising independent judgment and discretion on matters of significance.

19. Haney's primary duties were not management.

20. During Haney's employment, Haney did not have any authority to interview, select, and/or train employees.  Haney did not have any authority to set and adjust the rates of pay and hours of work for any employees.  Haney had no authority to direct the work of employees.  Haney did not maintain production or sales records at all when he worked for the Defendant, nor did he use any such records to supervise or control any employee.  In fact, Haney knows little about the business's financing or financial success or failure, other than it was grossing about $3,000,000 and was trying to grow that by a factor of 5 or 6.  The finances were not his responsibility.  Haney did not supervise any staff.  Haney had absolutely no say concerning any of the costs.  For example, concerning wages paid to employees, Haney had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants.  Haney had no authority to spend any of the Defendant's money at all, and had no

authority to authorize the payment of bills. Haney never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21. While Haney worked for the Defendants, he never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. While Haney worked for the Defendants his last two years, he never handled employee complaints and grievances, as that was for the Defendants to do. Also, Haney never disciplined employees, nor did he have the power or authority to do that. Haney did not plan any work for any employee, as there was no work to plan. Haney never determined any techniques to be used by employees to do their job. Haney never apportioned work among any employees, as there were no employees who reported to him to whom to apportion work. Haney never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. Haney had no involvement in controlling the flow and distribution of materials or merchandise and supplies. Haney had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Haney had no involvement with respect to budgeting. Haney was not involved in reviewing any sort of financial documents or statements of the buildings, and he did not review any such documents, nor was Haney supposed to. Haney had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that Haney had anything to do with in terms of deciding how they would be handled or dealt with while he worked for Defendant, nor did he have anything to do with paperwork concerning new employees or hires. Haney simply followed the established techniques and procedures with respect to his duties, all of which were repetitive, routine, and recurrent work.

22. Haney did not do anything that could have resulted in financial losses for the Defendants. Haney did not perform work that was directly related to management or general

business operations of Defendants or their customers, because Haney did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (manual labor fixing boats and other manual tasks, and work arising out of that, communications with clients concerning the boat and payment). Haney also did not perform work directly related to the management or general business operations of the Defendants because Haney did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Rather, Haney was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of getting boats repaired.

23. In the course of employment with Defendant, Haney worked the number of hours required of him, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24. Haney regularly worked in excess of forty (40) hours per workweek—60-70 hours per week on average.

25. The Defendant should have partial accurate records of hours worked, because it required Haney to login on a computer (though he was given tasks and worked off of the clock when instructed to). The Defendant was often late paying Haney, and consequently, Haney was often paid 1-5 business days after he was supposed to be paid, and received no draw check for the last several weeks that he worked.

26. Haney has retained the undersigned legal counsel to prosecute this action in his behalf, and has agreed to pay them a reasonable fee for their services.

27. Haney is entitled to his reasonable attorneys' fees for prosecuting this action, whether or not he is the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

28. Haney re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29. Haney is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30. By reason of the intentional, willful, and unlawful acts of Defendant, Haney has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31. As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Haney is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Haney demands judgment against Defendants for the wages and overtime payments due him for the hours worked by him for which he has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: ___April 16, 2020_____

                                                       The Kleppin Firm, P.A.
                                                      8751 W. Broward Blvd.
                                                      Suite 105
                                                      Plantation, FL 33324
                                                      Tel. (954) 424-1933
                                                      Fax  (954) 474-7405
                                                      E-mail: ckleppin@gkemploymentlaw.com


                                                      By:__s/Chris Kleppin_____
                                                          Chris Kleppin
                                                         Fla. Bar No. 625485